SHELDON B. FISHMAN and FRANCES C. FISHMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fishman v. Commissioner
Docket Nos. 3276-81, 3277-81, 3278-81, 3279-81, 3280-81, 3281-81, 3282-81, 3283-81.
United States Tax Court
T.C. Memo 1983-95; 1983 Tax Ct. Memo LEXIS 686; 45 T.C.M. (CCH) 765; T.C.M. (RIA) 83095; February 14, 1983. *686 Steven S. Brown and Royal B. Martin, Jr., for the petitioners. Gregory A. Vega, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Docket
Sec. 6653(a) [2]
No.
Deficiency
Year
Addition to Tax
Sheldon B. Fishman and
3276-81
$12,190.94
1977
$609.55
Frances C. Fishman
28,884.77
1978
1,444.24
42,669.38
1979
2,133.47
David Ogrentz
3277-81
3,083.63
1977
6,185.81
1978
3,798.81
1979
Gilbert J. Ogrentz and
3278-81
15,810.97
1977
914.74
Sharon J. Ogrentz
26,841.81
1978
1,668.97
43,171.16
1979
2,649.76
Steven Ogrentz
3279-81
3,083.63
1977
5,373.60
1978
3,762.55
1979
Dawn Ogrentz
3280-81
3,798.81
1979
Jeffrey Ogrentz
3281-81
3,720.51
1979
Craig Fishman
3282-81
3,105.63
1977
6,233.25
1978
9,298.24
1979
Michael Fishman
3283-81
3,105.63
1977
6,233.25
1978
10,290.00
1979
These cases have been consolidated *687 for trial, briefs, and opinion. After concessions, the issues are (1) whether respondent properly disallowed certain purchases of inventory claimed by a subchapter S corporation, and (2) whether petitioners Sheldon B. Fishman, Frances C. Fishman, Gilbert J. Ogrentz, and Sharon J. Ogrentz are liable for additions to tax due to negligence in 1977, 1978, and 1979. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. All petitioners in these consolidated cases were residents of either Lansing, Ill., or Chicago Heights, Ill., when they filed their petitions herein. At all relevant times, East Side Auto Parts, Inc. (East Side) was an electing small business corporatin under subchapter S.During its taxable years ending February 28, 1977, February 28, 1978, and February 28, 1979, the stock of East Side was held as follows: February 28, 1977 &
February 28, 1978
Shareholder
No. of Shares
% Ownership
Frances C. Fishman
1,500
30 %
Sharon J. Ogrentz
1,500
30 %
Frances C. Fishman,
Trustee for Craig Fishman
500
10 %
Frances C. Fishman,
Trustee for Michael Fishman
500
10 %
Sharon J. Ogrentz,
Trustee for Steven Ogrentz
500
10 %
Sharon J. Ogrentz,
Trustee for David Ogrentz
500
10 %
February 28, 1979
Frances C. Fishman
1,500
30 %
Sharon J. Ogrentz
1,500
30 %
Frances C. Fishman,
Trustee for Craig Fishman
500
10 %
Frances C. Fishman,
Trustee for Michael Fishman
500
10 %
Sharon J. Ogrentz,
Trustee for Jeffrey Ogrentz
250
5 %
Sharon J. Ogrentz,
Trustee for Steven Ogrentz
250
5 %
Sharon J. Ogrentz,
Trustee for Dawn Ogrentz
250
5 %
Sharon J. Ogrentz,
Trustee for David Ogrentz
250
5 %
*688 East Side was organized in 1973 for the sole purpose of engaging in the business of buying and selling used automobiles and used automobile parts. The business, located on the east side of Chicago, was managed by Sheldon B. Fishman (Fishman), husband of shareholder Frances C. Fishman, and Gilbert J. Ogrentz (Ogrentz), husband of shareholder Sharon J. Ogrentz. As the "counterman," Fishman was primarily responsible for buying and selling East Side's inventory of used automobiles and automobile parts. Ogrentz was in charge of the back of the shop where parts were delivered, repairs were made, and automobiles were stripped for parts. Linda Zart (Zart), a sister of Ogrentz, kept East Side's books and worked in an office at the front of the shop.On the rare occasins Fishman was absent, either Ogrentz or Zart assumed his place at the "counter." East Side purchased its inventory of used automobiles and automobile parts primarily from insurance companies, at auctions, and from individuals. Purchases from insurance companies and at auctions were made by check whereas individuals were paid in cash. When a part was purchased for cash, the seller signed an invoice prepared by Zart. Each *689 invoice contained a description of the part, the price paid for it, and the name and address of the seller. Beginning October 1976, the seller also signed in affidavit stating he was the legal owner of the part and that the cash purchase invoice contained his true name and address. The cash used to purchase parts from individuals was obtained from an envelope of "petty cash" which Zart kept in a desk drawer in her office exclusively for the purpose of buying automobile parts from individuals. She maintained up to $2,000 in such envelope. If the cash diminished to approximately $700, Zart replenished the funds by cashing a check endorsed to "petty cash" and signed by Fishman or Ogrentz. Zart sent the check stubs to East Side's accountant who then calculated the corporation's purchases for each month. [3]
East Side's "mark up" on sales of inventory purchased for cash was comparable to that on its inventory purchased by check. Its overall mark-up during its 1977, 1978 and 1979 taxable years also approximated *690 that of similar businesses in the Chicago area. In connection with the Government's audit of East Side, an Internal Revenue Service agent (herein the revenue agent), attempted to verify the cash purchases of inventory claimed by East Side by contacting the persons listed on a sampling of the cash purchase invoices.The revenue agent was unable to locate anyone who would admit to selling an automobile part to East Side. [4]
For its 1977, 1978, and 1979 taxable years, East Side claimed cash purchases of inventory in the amount of $132,315.00, $199,500.00, and $294,080.00, respectively.In his notices of deficiency, respondent increased petitioners' distributive shares of East Side's 1977, 1978, and 1979 taxable incomes by disallowing such purchases. Respondent also asserted section 6653(a) additions to tax against Fishman, Ogrentz, Frances C. Fishman, and Sharon J. Ogrentz for the years 1977, 1978, and 1979. OPINION The issue is whether respondent properly disallowed the *691 cash purchases of inventory claimed by East Side. Respondent asserts petitioners have failed to substantiate any of the cash purchases claimed by East Side. As such, respondent proposes to disallow all cash purchases of automobile parts. There is no doubt, however, that cash purchases were in fact made. Moreover, the evidence fully supports the amount of such cash purchases claimed by East Side. Every cash purchase of inventory claimed by East Side is supported by an invoice containing the alleged seller's name, address, and signature. Cash purchases occurring after September 30, 1976, are also evidenced by the "seller's" affidavit stating he is the legal owner of the subject automobile part and that his true name and address is set forth on the invoice. Despite the existence of these supporting records, respondent contends the cash purchases are unsubstantiated because the revenue agent who conducted the audit of East Side was unable to verify that any of the individuals identified on a sampling of the invoices ever sold an automobile part to East Side. In essence, respondent's position is that the invoices and affidavits are dummy records and the transactions which they allegedly *692 support never actually occurred. We simply do not believe East Side engaged in an elaborate scheme of fabricating cash purchases of inventory. Linda Zart, the bookkeeper of East Side, provided a clear and credible explanation of the procedures followed and the records prepared when East Side purchased inventory for cash. Her testimony was fully corroborated by Fishman and Ogrentz. Under the particular circumstances of this case, we are satisfied that the probative value of East Side's records and the foregoing testimony is not undermined by the revenue agent's inability to verify the information in East Side's records nor his hearsay assertion that some of the persons contacted denied having sold parts to East Side. See n. 4, supra. Furthermore, East Side's mark-up on the sale of inventory purchased for cash was comparable to that on its inventory purchased by check, and its overall mark-up during its 1977, 1978 and 1979 taxable years approximated that of similar businesses in the Chicago area. Since the record contains no evidence indicating that East Side's "mark-up" should be substantially higher than that of its competitors, we find no reason to doubt that East Side made *693 the alleged cash purchases of inventory. Accordingly, based on the entire record we find petitioners have sustained their burden of proof that the alleged cash purchases of inventory were made by East Side; thus, respondent erroneously disallowed such cash purchases of inventory in computing petitioners' distributive shares of East Side's 1977, 1978 and 1979 taxable incomes. [5]
To reflect concessions and the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: David Ogrentz, docket No. 3277-81; Gilbert J. Ogrentz and Sharon J. Ogrentz, docket No. 3278-81; Steven Ogrentz, docket No. 3279-81; Dawn Ogrentz, docket No. 3280-81; Jeffrey Ogrentz, docket No. 3281-81; Craig Fishman, docket No. 3282-81; and Michael Fishman, docket No. 3283-81.↩
2. All section references are to the Internal Revenue Code of 1954 as amended.↩
3. Although Zart also maintained a second envelope of petty cash for incidental expenses, checks written to replenish its funds were designated by a separate account number.↩
4. Several of the "sellers" the revenue agent attempted to contact did not live at the addresses set forth on the invoices. The persons he successfully contacted denied having sold a part to East Side.↩
5. Respondent's assertion of additions to tax for negligence is based solely on his claim that East Side's books and records inaccurately reflect the corporation's purchases of inventory during the years at issue.Since we have concluded herein that East Side's books and records accurately reflect the corporation's purchases of inventory, the additions to tax asserted by respondent must be denied.↩